IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| SKYLER LEROY GRIEBEL, | CV 21-00035-H-BMM-JTJ |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |
| MONTANA BOARD OF PARDONS AND PAROLE; JAMIE MICHEL; JOHN OLSON; ARUTO GONZALES, | |
| Defendants. | |

Plaintiff Skyler Leroy Griebel has filed a proposed Complaint seeking compensatory, declarative and injunctive relief against members of the Montana Board of Pardons and Parole ("BOPP"), regarding the procedures used in the revocation of his parole by failing to provide a preliminary hearing and a neutral and detached hearing body prior to depriving him of life and liberty. (Doc. 2 at 4-5.) As explained below, the Court recommends the matter be dismissed for failure to state a federal claim.

//

1

## I. STATEMENT OF THE CASE

### A. Factual Allegations

The Court is familiar with the claims Griebel attempts to advance; he previously filed a petition for a writ of habeas corpus.[1]  Griebel's petition was ultimately denied.  There, this Court provided the background of his state court proceedings as follows:

> On November 30, 2016, Griebel was committed to the Montana Department of Corrections ("DOC") for five-years based upon a conviction of Criminal Possession of Dangerous Drugs handed down in Montana's Eighteenth Judicial District, Gallatin County.  On September 29, 2017, Griebel was placed in the community on Conditional Release.  On December 11, 2017, Griebel's Conditional Release was revoked based upon a new felony charge of Partner Family Member Assault.  On April 9, 2019, Griebel was released from the Montana State Prison and placed in the Intensive Supervision Program.

> On April 29, 2020, Griebel was arrested by the Bozeman Police Department and incarcerated at the Gallatin County Detention Center based upon a Probation and Parole ("P&P") hold.  On May 1, 2020, Griebel's probation officer, Officer Michel, attempted to meet with Griebel at the Detention Center in order to serve him with a copy of his Notice/Waiver of On-Site Hearing and On-Site Affidavit of Probable Cause.  Griebel became agitated during the meeting, began slamming his hand and telephone against the glass dividing them, and called Officer Michel a profane name.  Officer Michel ended the meeting.

> On May 4, 2020, a preliminary on-site hearing was held.  Based upon Griebel's disruptive behavior three days earlier with Officer Michel, Griebel was excluded from the on-site hearing. At the conclusion of the hearing, it

---

[1] See, *Griebel v. Salmonsen, et al.*, Cause No. CV-21-20-H-DWM, Pet. (filed March 15, 2021).

was determined that probable cause existed to believe Griebel had violated
his parole conditions.

On July 17, 2020, a formal parole revocation hearing was held; the Montana
Board of Pardons and Parole ("the Board") found Griebel guilty of violating
his parole and imposed a 120-day sanction.  Griebel then filed a motion for
release which the district court construed as a petition for a writ of habeas
corpus.  The Department of Corrections, in conjunction with the Bozeman
P&P office and the Chair of the Board, determined there were procedural
irregularities during Griebel's on-site hearing.  Specifically, the State
conceded that Griebel should not have been excluded from the preliminary
on-site hearing and, accordingly, he was not provided the process he was
due at the May 4, 2020, hearing. The order revoking Griebel's parole was
vacated by the Board on July 17, 2020.

On October 12, 2020, Griebel was arrested for misdemeanor Obstructing
and Unlawful Restraint and appeared before the Park County Justice Court.
Griebel also acknowledges that he committed a contemporaneous parole
compliance violation based upon his alcohol and drug use.  See e.g., *Griebel
v. Gootkin*, OP 21-0064, 2021 WL 716416, at *1 (Mont. Feb. 23, 2021).
Griebel did not have an on-site preliminary hearing.  On December 11, 2020,
Griebel appeared before the Board; his parole was revoked.

Griebel filed a petition for a writ of habeas corpus with the Montana
Supreme Court alleging that the Board erred in revoking his parole, resulting
in an illegal sentence and constitutional violations.  See, *Griebel*, OP 21-
0064, at *1.  Specifically, Griebel argued the Board and the DOC lacked
probable cause and that the length of his confinement is excessive.  *Id*.
Relying upon *Morrisey v Brewer*, 408 U.S. 471 (1972), Griebel argued the
Board and the DOC violated 14th and 5th Amendments to the United States
Constitution and that the Board did not give deference to its own
administrative rules which required a preliminary on-site hearing.  *Id*.

In relation to this argument, the Montana Supreme Court held:

Griebel asserts that the administrative rule should apply to him instead of the
statute. Admin. R. M. 20.25.801(3) (2016) states:

3

No on-site hearing is necessary if the parolee is convicted of a felony offense during the period of supervision, or if the parolee is arrested in a state in which the parolee has no permission to travel or reside.

He is incorrect in his assertion. Montana's statute for supervision of parolees applies and controls instead of the administrative rule. Section 46-23-1024(1), MCA, lists the exceptions for an initial hearing after an arrest:

(1) After the arrest of the parolee, an initial hearing must be held unless:
(a) the hearing is waived by the parolee;
(b) *the parolee has been charged in any court with a violation of the law*; or
(c) the probation and parole officer authorizes release or initiates an intervention hearing under subsection (4).

Section 46-23-1024(1)(b), MCA (emphasis added). "[A] statute controls over an administrative rule, at least to the extent of any inconsistency or conflict." *Williamson v. Mont. PSC*, 2012 MT 32, ¶ 16, 364 Mont. 128, 272 P.3d 71 (citing *Haney v. Mahoney*, 2001 MT 201, ¶ 6, 306 Mont. 288, 32 P.3d 1254).

Griebel was charged in a court with two misdemeanors. He was not due an initial or on-site hearing. Because he had no hearing, Griebel did not have to be served a report of violation. Admin. R. M. 20.25.801(4) (2016). No other notice was due Griebel because of his arrest. *See* § 46-23-1023(1), MCA. *Id*. at 1-2.

The Court found Griebel's other assertions lacking in merit and concluded Griebel was not entitled to an on-site hearing and that probable cause for revocation existed. *Id*. at 2. Griebel had two noncompliance violations, specifically criminal offenses, as defined by 46-23-102(4)(a)(iv) MCA, accordingly, under state law, a parole officer had the ability to initiate a petition for revocation. *Id.,* (citing 46-23-1025, MCA). Because Griebel failed to show an illegal parole revocation occurred in violation of his right to due process, Griebel was not entitled to habeas corpus relief. *Id*. The petition was denied and dismissed.

4

See, *Griebel v. Salmonsen, et al*., Cause No. CV-21-20-H-DWM, Or. at 2-6 (D. Mont. Aug. 12, 2021)(internal citations omitted).

In the instant matter, Griebel again contends that on October 14, 2020, his Fourteenth Amendment right to due process was violated when Parole Officer Michel remanded him to the Board without allowing a preliminary onsite hearing at the Park County Detention Center.  (Doc. 2 at 5, ¶ D; 14).  Griebel believes the due process violation was further compounded when he appeared before the BOPP on December 11, 2020 for a parole revocation hearing.  *Id*. at 13.  Griebel claims the BOPP is not a neutral and detached hearings body.  *Id*. at 5; 13.

### B. Claims

Griebel advances the following claims:

 **Claim 1**: Defendant Parole Officer Michel deprived Griebel of life and liberty by a campaign of retaliation and not affording the minimum due process requirements as required by the federal and state constitutions.  Officer Michel submitted a secure placement request for Griebel without first affording him a preliminary on-site hearing to establish probable cause.  Such action was determined in a prior proceeding initiated by Griebel to be illegal, see (Doc. 2 at 12.);

**Claim 2**: Defendant PO II Arturo Gonzales participated in the campaign of retaliation to deprive Griebel of his due process rights by signing off on the secure placement order without first affording Griebel a preliminary onsite hearing to establish probable case.  Such action was determined in a prior proceeding initiated by Griebel to be illegal, *Id*.;

**Claim 3**: Defendant Deputy Chief John Olson participated in the campaign of retaliation to deprive Griebel of life and liberty by signing off on the secure placement request without ensuring that PO II and PO afforded Griebel due

5

process.  Such action was determined in a prior proceeding initiated by Griebel to be illegal, *Id*. at 13;

**Claim 4**: The BOPP participated in the campaign of retaliation to deprive Griebel of life and liberty by approving the secure placement request without affording Griebel a preliminary onsite hearing to establish probable cause.  The BOPP also used vacated violations and hearings from previous illegal actions in the report of violation to support revocation of Griebel's parole.  The BOPP additionally compelled Griebel to incriminate himself in other prosecutions to support the revocation of his parole.  They also failed to provide a neutral and detached hearings body.  Finally, the BOPP held an illegal hearing on December 11, 2020, due to no prior preliminary hearing being conducted as due process requires.  Such action was determined in a prior proceeding initiated by Griebel to be illegal, *Id*. at 13-14;

It appears Griebel believes the Defendants are retaliating against him for his June 2020 state habeas filing in which the Montana Department of Corrections ("DOC") and BOPP ultimately conceded that a procedural irregularity occurred when Griebel was prevented from personally appearing at his May 2020 onsite hearing.  *Id*. at 14.

## II.    SCREENING STANDARD

Mr. Griebel is a prisoner proceeding in forma pauperis so the Court must review his Complaint under 28 U.S.C. § 1915 and § 1915A.  Sections 1915A(b) and 1915(e)(2)(B) require the Court to dismiss a complaint filed in forma pauperis and/or by a prisoner against a governmental defendant before it is served if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  A

complaint is frivolous if it "lacks an arguable basis either in law or in fact."

*Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  "A case is malicious if it was filed

with the intention or desire to harm another."  *Andrews v. King*, 398 F.3d 1113,

1121 (9th Cir. 2005).  A complaint fails to state a claim upon which relief may be

granted if a plaintiff fails to allege the "grounds" of his "entitlement to relief."  *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation omitted).

Rule 8 of the Federal Rules of Civil Procedure provides that a complaint

"that states a claim for relief must contain . . . a short and plain statement of the

claim showing that the [plaintiff] is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  That

is, a complaint must "contain sufficient factual matter, accepted as true, to state a

claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quotations omitted).  A complaint's allegations must cross "the line from

conceivable to plausible."  *Iqbal*, 556 U.S. at 680.

There is a two-step procedure to determine whether a complaint's

allegations cross that line.  *See Twombly*, 550 U.S. at 556; *Iqbal*, 556 U.S. 662.

First, the Court must identify "the allegations in the complaint that are not entitled

to the assumption of truth."  *Iqbal*, 556 U.S. at 679, 680.  Factual allegations are

not entitled to the assumption of truth if they are "merely consistent with liability,"

or "amount to nothing more than a 'formulaic recitation of the elements' of a

constitutional" claim. *Id.* at 679, 681. A complaint stops short of the line between probability and the possibility of relief where the facts pled are merely consistent with a defendant's liability. *Id.* at 678.

Second, the Court must determine whether the complaint states a "plausible" claim for relief. *Iqbal*, 556 U.S. at 679. A claim is "plausible" if the factual allegations, which are accepted as true, "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. This inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). If the factual allegations, which are accepted as true, "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]' — 'that the pleader is entitled to relief.'" *Id. citing* Fed.R.Civ.P. 8(a)(2).

"A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardu*, 551 U.S. 89, 94 (2007); *cf*. Fed. Rule Civ. Proc. 8(e) ("Pleadings must be construed so as to do justice").

## III.   SCREENING ANALYSIS

As set forth  above, this Court is familiar with the claims Griebel attempts to

8

advance, because it has already dealt with similar claims in the habeas context.  In both of Griebel's federal cases, his primary complaint is the denial of an onsite hearing to make a preliminary probable cause determination prior to the revocation of his parole.

In *Morrissey v. Brewer,* 408 U.S. 471 (1972), the United States Supreme Court held that, although parolees enjoy only "conditional liberty," termination of that liberty constitutes a "grievous loss" requiring "some orderly process." *Id.* at 495.  However, "the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations."  *Id*. at 480.  The Court determined the process that is due to an individual facing parole revocation includes "two hearings, one a preliminary hearing at the time of his arrest and detention to determine whether there is probable cause to believe that he has committed a violation of his parole, and the other a somewhat more comprehensive hearing prior to the making of the final revocation decision." *Gagnon v. Scarpelli,* 411 U.S. 778, 781–782 (1973) (*citing Morrissey,* 408 U.S. 471). But *Morrissey* also explains that the requirements of due process are flexible and "not all situations calling for procedural safeguards call for the same kind of procedure." *Morrissey,* 408 U.S. at 481. Additionally, while *Morrissey* and *Gagnon* require a probable cause determination before probation is

9

revoked, the individual states may implement different procedures and still satisfy due process. See generally, *id.* at 481, 485, 487; *Gagnon,* 411 U.S. at 782.

Much like he argued in his habeas petition, Griebel points to the fact that he was not allowed to be present at his May 4, 2020, preliminary hearing, a decision which the BOPP later determined warranted dismissal of the initial order revoking his parole.  Griebel then analogizes the subsequent denial of a preliminary hearing following his October 2020 Park County arrest, to his exclusion from the May hearing.  He then asserts the subsequent revocation of parole should also be deemed unlawful.  But the fact that Griebel might have received a favorable outcome when the state prevented him from participating in his May 2020 preliminary onsite  hearing, does not mean that the decision not to hold a preliminary onsite hearing following his Park County arrest makes his subsequent revocation illegal.

The BOPP's decision not to hold a preliminary hearing was made pursuant to state statute, which provides an initial hearing need not be held when a parolee has been charged in any court with a violation of the law.  See, Mont. Code Ann. § 46-23-1924(1)(b).  Thus, by virtue of the Park County charges, the Montana Supreme Court concluded not only was Griebel not entitled to an on-site hearing, but also that probable cause to initiate the revocation proceedings existed.  Under

10

*Morrissey*, the State of Montana is free to implement its own procedures and those procedures can still satisfy due process. *Morrissey*, 408 U.S. at 481. Accordingly, Griebel's due process rights under *Morrissey* were not violated. This same rationale leads to the conclusion that the December 2020 parole revocation hearing was not unlawful because probable cause existed for the BOPP to initiate and ultimately pursue the revocation proceedings.

To the extent that Griebel asserts a retaliation claim, he likewise cannot make the requisite showing. Under the First Amendment, prison officials may not retaliate against prisoners for initiating litigation. *Rhodes v. Robinson*, 408 F. 3d 559, 568 (9th Cir. 2005). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Brodheim v. Cry*, 584 F. 3d 1262, 1269 (9th Cir. 2009)(quoting *Rhodes*, 408 F. 3d at 567-68). A plaintiff must establish a nexus between the alleged retaliatory act and the protected activity, see *Huskey v. City of San Jose*, 204 F. 3d 893, 899 (9th Cir. 2000), and must show he suffered more than minimal harm, *Rhodes*, 408 F. 3d at 588 n. 11. The plaintiff bears the burden of pleading

11

and proving the absence of legitimate correctional goals for the conduct of which

he complains.  *Pratt v. Rowland*, 65 F. 3d 802, 806 (9th Cir. 1995).

Griebel must demonstrate that his exercise of his First Amendment right was

a substantial motivating factor behind defendants' conduct.  *Mt. Healthy Sch. Dist.*

*Bd. Of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Sorrano's Gasco, Inc. v.*

*Morgan*, 874 F. 2d 1310, 1314 (9th Cir. 1989).  Mere allegations of retaliatory

motive or conduct will not suffice.  A prisoner must "allege specific facts showing

retaliation because of the exercise of the prisoner's constitutional rights."  *Frazier*

*v. Dubois*, 922 F. 2d 560, 562, n. 1 (10th Cir. 1990).

In this instance, Griebel cannot show that the Defendants acted with a

retaliatory motive due to Griebel 's filing, months earlier, of a state habeas petition.

In relation to Griebel's June 2020 state habeas petition, the DOC and BOPP

actually conceded that Griebel should have been present at the hearing and that he

was entitled to relief.[2]  In fact, upon realizing the mistake made in denying

Griebel's presence at his May 4, 2020 onsite hearing, the BOPP ordered Griebel to

be released from custody prior to the district court ruling on Griebel's application

for relief.  See, (Doc. 2-1 at 4.)

In October of 2020, following Griebel's arrest on new criminal charges,

---

[2] See, (Doc. 2-1)(Montana DOC's Response to Griebel's application for writ of habeas corpus).

revocation proceedings were again initiated.  There is no indication that these

proceedings stemmed from the BOPP's desire to get even with Griebel or teach

him a lesson.  Rather the revocation ball began rolling due to Griebel's own

criminal conduct.

As explained above, Griebel was not entitled to a preliminary onsite hearing

following his October 2020 arrest, because the relevant state statute provided that a

new criminal charge was adequate to establish probable cause to initiate the

revocation proceedings.  For this reason, Griebel cannot show a nexus between the

filing of his state habeas petition and the purported retaliation.  Moreover,

Griebel's First Amendment rights have not been chilled, he has sought various

forms of relief following his December 2020 parole revocation before both the

Montana Supreme Court and this Court.  Additionally, Griebel has failed to show

that the Defendants' actions did not reasonably advance a correctional goal.  He

committed a new offense and was found to be in violation of the conditions of his

original felony sentence.  Thus, a legitimate penological goal for the revocation of

Griebel's sentence was present.  In short, Griebel has not made a showing of all the

requisite retaliation factors.  See, *Rhodes*, 408 F. 3d at 567-68.

Additionally, the Court notes that "[r]etaliation claims by prisoners are

'prone to abuse' since prisoners can claim retaliation for every decision they

dislike." *Graham v. Henderson*, 89 F. 3d 75, 79 (2d Cir. 1996)(quoting *Flaherty v.*
*Coughlin*, 713 F. 2d 10, 13 (2d Cir. 1983).  That seems to be the case here.  There
is no indication that the Defendants retaliated against Griebel or that BOPP failed
to provide a neutral and detached hearing body.  There was an adequate basis
underlying the revocation of Griebel's parole.  While Griebel may dislike the
decision to revoke his parole, such disagreement does not convert this issue into
one of constitutional import.

Finally, much like he argued in his habeas petition, Griebel asserts the BOPP
compelled him to incriminate himself in other prosecutions to support the parole
revocation.  The Fifth Amendment provides that no person "shall be compelled in
any criminal case to be a witness against himself." U.S. CONST., amend. V.
"[T]his prohibition not only permits a person to refuse to testify against himself at
a criminal trial in which he is a defendant, but also privileges him not to answer
official questions put to him in any other proceeding, civil or criminal, formal or
informal, where the answers might incriminate him in future criminal
proceedings." *Minnesota v. Murphy*, 465 U.S. 420, 426 (1984) (internal quotations
omitted); *see also Estelle v. Smith*, 451 U.S. 454, 462-63 (1981).

From the facts contained in his complaint, it appears Griebel was only
required to enter admissions and/or denials to the alleged parole violations.  He

14

does not explain if he was required to provide any other statements. In order to establish a Fifth Amendment violation outside the context of a criminal trial, Griebel must show that (1) the testimony desired by the government carries a real and appreciable danger of self-incrimination in a future criminal prosecution; and (2) that the testimony was compelled, i.e., the penalties suffered are sufficiently coercive and not hypothetical. *United States v. Antelope*, 395 F. 3d 1128, 1134-39 (9th Cir. 2005), (*citing Minor v. United States*, 396 U.S. 87, 98 (1969) and *Lefkowitz v. Cunningham*, 431 U.S. 801, 806 (1977)).  Griebel cannot make the requisite showing under either prong.  He does not explain what testimony, if any, he provided at his hearing.  Nor does he allege how such testimony was incriminating or that he was compelled to provide it.  Further, there is no indication that Griebel faces future criminal prosecution as a result of his appearance before the BOPP, or that the State of Montana sought to punish him for allegedly exercising his right to remain silent.  In short, Griebel has not established a Fifth Amendment violation; this claim also lacks merit.

## IV.   Conclusion

28 U.S.C. §§ 1915 and 1915A require the dismissal of a complaint that fails to state a claim upon which relief may be granted but do not deprive the district court of its discretion to grant or deny leave to amend. *Lopez v. Smith*, 203 F.3d

1122, 1127 (9th Cir. 2000).  The Court can decline to grant leave to amend if "it

determines that the pleading could not possibly be cured by the allegation of other

facts."  *Lopez*, 203 F.3d. at 1127 (*quoting Doe v. United States*, 58 F.3d 494, 497

(9th Cir. 1995)).  Leave to amend is liberally granted to pro se litigants unless it is

"absolutely clear that the deficiencies of the complaint could not be cured by

amendment."  *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987) (*citing*

*Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980)).

Griebel has failed to state a claim upon which relief may be granted.  This is

a defect which could not be cured by amendment; leave to amend would be futile.

This matter should be dismissed.

## "Strike" under 28 U.S.C. §1915(g)

The Prison Litigation Reform Act prohibits prisoners from bringing forma

pauperis civil actions if the prisoner has brought three or more actions in federal

court that were dismissed for frivolousness, maliciousness, or failure to state a

claim.  28 U.S.C. §1915(g).  Griebel has failed to state a claim upon which relief

may be granted and his pleadings are frivolous and present an "obvious bar to

securing relief."  *Washington v. Los Angeles County Sheriff's Department*, 833

F.3d 1048, 1055 (9th Cir. 2016)(*quoting ASARCO, LLC v. Union Pac. R.R. Co.*,

765 F.3d 999, 1004 (9th Cir. 2014)).  The dismissal of this case should constitute a strike under 28 U.S.C. §1915(g).

Based upon the foregoing, the Court issues the following:

## RECOMMENDATIONS

1.  This matter should be dismissed.  The Clerk of Court should be directed to close this matter and enter judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.

2.  The Clerk of Court should be directed to have the docket reflect that the Court certifies pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate Procedure that any appeal of this decision would not be taken in good faith.  The record makes plain that the Complaint filed in this case is frivolous as it lacks arguable substance in law or fact.

3.  The Clerk of Court should be directed to have the docket reflect that this dismissal counts as a strike pursuant to 28 U.S.C. § 1915(g).  Griebel failed to state a claim upon which relief may be granted and his pleadings present an "obvious bar to securing relief."

**NOTICE OF RIGHT TO OBJECT TO OBJECT
TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES
OF FAILURE TO OBJECT**

17

Griebel may file objections to these Findings and Recommendations within fourteen (14) days after service.  28 U.S.C. § 636.  Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

This order is not immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed until entry of the District Court's final judgment.

DATED this 12th day of October, 2021.

/s/ John Johnston
John Johnston
United States Magistrate Judge

18